**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case Nos. 3:23CR00575 |
| Plaintiff, | 3:24CR00329 |
| v. | Hon. Jeffrey J. Helmick |
| **SRINIVAS VALLURU, ET AL.,** | |
| Defendant. | |

---

## SENTENCING MEMORANDUM

---

Now here comes Defendant, Srinivas Valluru, by and through Counsel Kurt W. Bruderly, hereby respectfully submits the following Sentencing Memorandum for the Court's consideration under 18 U.S.C. § 3553(a).  For the reasons stated herein, Defendant respectfully requests a downward variance from the advisory guideline range, based on his lack of criminal history, minimal role in the offense, and genuine remorse for his conduct.

1

## MEMORANDUM

On December 18, 2024, Defendant Srinivas Valluru entered a guilty plea to one count of Money Laundering Conspiracy in violation of 18 USC § 1956(h) in case 3:23CR00575 and one count of making false statements to federal agents in violation of 18 USC § 1001(a)(2) in case 3:24CR00329.  The Court ordered the generation of a Presentence Report (PSR) which was filed on March 24, 2025 [Doc. 213] and encompasses the Parties' mutual objections and the PSR's author's responses.

Srinivas Valluru or "Ravi" as he is often called by his middle name, originates from India, as most of the defendants in this case.  He has little to no contacts to the United States beyond his sister and her Husband who live in the Pacific Northwest.  He came to America as an educated individual in pursuit of graduate studies and working as a software engineer.  Where his immigration story may not be unique, Ravi most certainly is – described by his family as intelligent, respectful, and reserved.  In its sentencing memorandum the Government seems to "lump" all of the defendants together as one criminal entity operating on concert to defraud vulnerable victims, but sentencing courts must consider the individual circumstances of both the offense and the offender when fashioning an appropriate sentence that is sufficient but not greater than necessary to fulfill the purpose of sentencing.

Ravi has accepted responsibility for his actions by pleading guilty and he deeply regrets his actions, as evidenced by his sincere letter to the Court.  Despite what may now be reflected on paper, this is not a man who came to America in the hopes of getting rich by defrauding others, but rather a young man who was persuaded by his good friend Dileep Sakineni to make some money the easy way while trying to advance his education and career in a foreign country.

2

A. The Nature and Circumstances of the Offense (§3553(a)(1))

Mr. Valluru's offenses, though serious, must be viewed within their context.  Regarding the conspiracy, his involvement was relatively limited compared to others, despite the Government's assertion that without him, "there is no scheme."  No evidence exists to suggest that Ravi was involved in a manner beyond being a low-level transporter of money on a few occasions at the direction of Defendant Sakineni.  His role was peripheral and non-violent.  He did not initiate or orchestrate the broader fraudulent scheme and played no part in contacting victims.  He did not dress as law enforcement, misrepresent himself, or take any action to manipulate elderly victims directly.  Though the PSR attributes $494,720 of loss to him, the evidence establishes that Ravi only *actually* transported approximately $105,000 –  markedly less than the amounts of his co-defendant transporters and distinguishable from those who deceived the victims.

Where the Government relies on a text message thread consisting of locations and dollar amounts of possible victims as evidence of his "reasonable foreseeability", Ravi argues that the fact he did not participate in those suggested "drops" should count for something.  The fact that he chose not to actively commit those acts in furtherance of the conspiracy appears to not matter in the grand calculus of loss amount enhancements.  Instead, Ravi believes that it shows that he was not willing to fully participate as the Government suggests.  Moreover, assertions that he "stole" $50,000 from his co-conspirators from an unidentified victim is not supported by credible evidence beyond the hearsay statements of a co-defendant.  The alleged victim of that $50,000 is unknown.  No texts from the scheme leaders mention this or complain about this theft, and there appears to be no bank records or noticeable change in Ravi's lifestyle to support the allegation.  Ravi takes

3

exception to the assertion that he stole $50,000, though he notes this amount does not change his loss amount calculation.

Regarding the false statements to agents, Ravi's conduct stemmed from a misguided attempt to secure immigration benefits through fraudulent means.  This offense should be looked upon separately as a reflection of poor judgment and a desire to find a life in the United States, rather than an inherent criminal intent or a propensity for criminal behavior given his later involvement in the conspiracy.  Ravi was desperate at the time to continue his life and education in the US and was offered a solution that he thought was victimless at the time.  His lies to agents were made out of fear and an effort to hide his shame marriage were a mistake for which he accepts full responsibility.

B. History and Characteristics of the Defendant (§3553(a)(1))

Ravi emigrated from India to pursue higher education, demonstrating a strong initiative and ambition.  In the United States he earned a master's degree  in computer science and worked as a software developer earning between $60 and $80 hourly.  His family describes him as compassionate, responsible, and respectful, highlighting his criminal conduct as a significant deviation from his character and upbringing.  The support from his family, emphasizing his positive personal qualities, underscores his capacity for rehabilitation.  Ravi argues that such strong family support is a critical factor to consider when crafting an appropriate sentence.  It is with this familial support that the Court can rely upon to help protect the public against any future crimes or provide deterrence, along with the collateral consequence of his eventual removal from the United States (where courts have recognized the appropriateness of shorter sentences for deportable non-citizens.  See *United States v. Restrepo*, 999 F.2d 640, 645 (2d Cir. 1993)).

Moreover, although he has been convicted, "criminal" is a moniker that causes him great internal strife.  With no criminal history Ravi presents as intelligent and respectful to all – and despite the Government's assertion that he made threats to a co-defendant; there is no evidence to show he is actually violent or aggressive outside of the high-pressure situation of a federal criminal case.  If history is any indicator of future behavior, this Court can be confident that there is little to no chance of recidivism from this defendant.

C. Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment (§3553(a)(2)(A))

The Government's sealed Sentencing Memorandum asks this Court to make an example of the defendants in order to promote respect for the law and maybe deter other Indian fraudsters from similar behavior.  When considering the actions of this specific defendant, it cannot be said that the suggested sentence at the high end of the guidelines (78 months) would achieve this purpose any more so than a sentence with a downward variance below the guideline range. Defendant argues that if someone is to be made an example of, it should be those that organized and controlled the scheme and had direct contact in convincing the victims to transfer their assets. Just punishment, in this instance, can be achieved by a minimal custodial sentence followed by deportation and restrictions on re-entry into the United States – a lengthier sentence would be greater than necessary in this instance.

D. Need to Afford Adequate Deterrence (§3553(a)(2)(B))

Defendant argues that the deterrent effect of imprisonment is achieved more through the certainty of punishment rather than its severity.  Even a shorter custodial sentence, paired with

5

conditions of supervised release, would adequately deter Mr. Valluru or similarly situated individuals.  Having never spent a day behind bars, Defendant asserts that his pretrial detention since December 18, 2023 has already satisfied the "adequate deterrence" purpose of federal sentencing – particularly for a first-time, remorseful offender, subject to deportation.

E. Need to Protect the Public (§3553(a)(2)(C))

Mr. Valluru poses a minimal risk to the public.  His lack of prior criminal history, his demonstrated remorse, and the non-violent nature of his crimes suggest a low likelihood of reoffending.  The public can be adequately protected through lengthy supervised release and deportation, rather than a significant sentence.  Moreover, Ravi argues that this factor should weigh more heavily on the Court's sentencing of those defendants who were directly involved in organizing and planning the fraud/deception portion of this conspiracy and not the transporters who were merely their pawns.

F. The Need to Avoid Unwarranted Sentence Disparities (§3553(a)(6))

As noted in Defendant's objections to the PSR, it is believed that the proposed Guideline enhancements substantially overstate Mr. Valluru's culpability, particularly regarding obstruction, vulnerable victims, loss calculations, and international scheme involvement.  Defendant asserts that *even if* this Court confirms the final PSR's guideline calculations as appropriate, courts have granted downward variances when the Guidelines substantially overstate a defendant's actual culpability (see *United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016)).  In this instance, such a downward variance is justified – if not solely to avoid unwarranted disparities between more culpable co-defendants and ensure proportionality with similarly situated defendants

6

nationally. PSR ¶ 127 shows this potential disproportionality by indicating that the average length of sentence for defendants with similar criminal histories and offense levels is 55 months, rather than the 63-78 months the PSR proposes. Moreover, Defendant concedes that he is being sentenced on two separate convictions (unlike some co-defendants), the PSR and the USSG do not differentiate between defendants with unrelated crimes or multiple cases and therefore, neither should this Court – further necessitating a downward variance.

### Conclusion

Considering the factors outlined in 18 U.S.C. § 3553(a) and the arguments detailed above, Mr. Valluru respectfully requests the Court impose a sentence below the advisory Guideline range that appropriately accounts for his limited culpability in the conspiracy, genuine remorse, lack of criminal history, non-violent nature, and strong prospects for successful rehabilitation. Furthermore, Defendant's removal from the United States further justifies a downward variance given his ineligibility for transitional release into the community and enrollment in BOP programs that offer further sentence reductions. Given the totality of the circumstances, a sentence below the advisory guideline range would be sufficient, but not greater than necessary to fulfill the proposes of sentencing.

Respectfully submitted,

/s/ Kurt W. Bruderly
KURT W. BRUDERLY (0082705)

Kurt W. Bruderly
Law Offices of Kurt W. Bruderly, LLC
1119 Adams Street, Second Floor
Toledo, Ohio 43604
Tel: (419) 243-3800

Fax: (419) 243-4046
Email: kurt@lawkwb.com

**<u>CERTIFICATION</u>**

This is to certify that on April 4, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF system.

/s/ Kurt W. Bruderly

8